UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CONNELL BROS. LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1795 JAR |
| ) | |
| GANNON INTERNATIONAL, LTD., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment as to Count II (ECF No. 58). This matter is fully briefed and ready for disposition.

## BACKGROUND

Connell Bros. Company, Ltd. ("Connell") sells products such as industrial chemicals, minerals, and food ingredients in Southeast Asia, among other places. (Connell's Statement of Uncontroverted Material Facts ("SUMF"), ECF No. 60, ¶1). Gannon International, Ltd. ("Gannon") is a holding company headquartered in St. Louis, Missouri, and Gannon Hong Kong is a wholly-owned subsidiary of Gannon which distributed products into Vietnam for its customers, including Connell. (SUMF, ¶¶2-3).

On November 30, 2007, Connell entered into a distributorship agreement (the "Distributorship Agreement") with Gannon Hong Kong. (SUMF, ¶4). Pursuant to the Distributorship Agreement, Gannon Hong Kong was appointed as Connell's authorized distributor for certain products within Vietnam. (SUMF, ¶6).

Gannon Hong Kong utilized the services of a domestic, Vietnamese company, Cuu Bau Chau ("CB Chau") to assist in distributing Connell's products. (SUMF, ¶7). CB Chau issued purchase orders to Connell pursuant to the Distribution Agreement and handled the distribution of products

inside Vietnam. (SUMF, ¶10). In an agreement signed on April 21, 2008 ("April Agreement"), CB Chau's role in this process was agreed to by Connell and Gannon Hong Kong. (SUMF, ¶¶8-9).[1]

Paragraph 6.5 of the Distribution Agreement called for Gannon to guaranty the obligations of Gannon Hong Kong. (SUMF, ¶5). Gannon executed a commercial guaranty, dated July 28, 2008 ("July Guaranty"), in favor of Connell. (SUMF, ¶¶12-13; ECF No. 60-5). Under Paragraph 1 of the July Guaranty, Gannon "unconditionally and irrevocably guarantie[d] to [Connell] the full and timely payment of all amounts due from [Gannon Hong Kong] in favor of [Connell] (the "Guaranteed Debt"), and unconditionally agree[d] to pay [Connell] the full amount of the Guaranteed Debt." (SUMF, ¶13). Relying on the July Guaranty, Connell permitted Gannon Hong Kong and CB Chau to distribute certain Connell products in Vietnam. (SUMF, ¶14).[2]

Several invoices ("Unpaid Invoices") issued under the Distribution Agreement prior to October 30, 2010 remain unpaid in whole or in part, and such amounts are due and owing from Gannon Hong Kong to Connell. (SUMF, ¶¶15-16). As of the time of the filing of Connell's Motion for Summary Judgment as to Count II, $2,178,807.63 remains overdue and owing to Connell under the Unpaid Invoices. This amount includes only the principal and does not include any interest calculation. (SUMF, ¶17).

---

[1] Connell refers to this as an amendment of the Distributorship Agreement, but Gannon claims that this was a separate agreement and did not amend the Distributorship Agreement. See Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Response"), ECF No. 61, p. 3. As stated by Connell, this distinction is a matter of semantics. (Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment as to Count II ("Reply"), ECF No. 67, p. 4). Gannon does not dispute the substance of the April Agreement, wherein the parties explicitly stated that they were modifying the Distribution Agreement. (Id.).

[2] See also July Guaranty, ¶1 ("**In order to induce [Connell] to advance credit to The Gannon Companies (Hong Kong) Limited** ..., an affiliate of [Gannon], in connection with [Gannon Hong Kong's] distribution of various products for [Connell], [Gannon] hereby unconditionally and irrevocably guaranties to [Connell] the full and timely payment of all amounts due ...")(emphasis added).

Connell has made a demand for payment from Gannon under the July Guaranty, but Gannon has not made any payments to Connell. (SUMF, ¶18). In Paragraph 6, the July Guaranty also provides for the recovery of reasonable attorneys' fees and costs associated with any action to recover under it or under the Distribution Agreement. (SUMF, ¶13).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of its pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations,

- 3 -

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

A party "is entitled to judgment on a breach of guaranty claim based upon undisputed evidence that (1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." Gray1 CPB, LLC v. Kolokotronis, 202 Cal. App. 4th 480, 486 (Cal. App. 3d Dist. 2011)(citing Torrey Pines Bank v. Superior Court, 216 Cal. App. 3d 813, 819 (Cal. App. 4th Dist. 1989)).[3]  Connell has established all of these elements.  First, the parties do not dispute that the July Guaranty is valid.  Second, the parties do not contest that Gannon (or Gannon Hong Kong) has not paid the full amount of the invoices for products that were distributed through the Distribution Agreement with Gannon Hong Kong on the sales contracts issued by CB Chau.[4]  Finally, there is no dispute that Gannon has not performed under the July Guaranty because it has not paid the amount due pursuant to the Unpaid Invoices.  (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment as to Count II, ECF No. 59, pp. 6-7).

In its Response, Gannon raises several objections to its liability under the July Guaranty. First, Gannon contends that it is not liable for the Unpaid Invoices because the July Guaranty only applies to amounts due and owing from Gannon Hong Kong to Connell. (Response, p. 6). Gannon maintains that it cannot be liable under the July Guaranty because the Unpaid Invoices relate to amounts owed from CB Chau to Connell.  (Id.).  Gannon claims that it "simply is not liable for the Unpaid Invoices incurred by CB Chau." (Id.).  Gannon also asserts that CB Chau was not the agent

---

[3]The July Guaranty provides that the laws of the State of California govern any disputes.

[4]Gannon, however, disputes the amounts charged in those invoices.

of Gannon Hong Kong, such that it cannot be held liable for Unpaid Invoices incurred by CB Chau. (Id., p. 7).

Gannon's argument, however, ignores the April Agreement. Section 1.1 of the April Agreement provides that CB Chau was to issue all sales contracts under the Distribution Agreement and Gannon Hong Kong would continue to pay those invoices. (Reply, p. 3). Section 1 of the April Agreement regarding "NEW ORDERS" provides that "all sales contracts" would be issued by CB Chau and then sets forth the payment terms whereby Gannon Hong Kong would pay for them. (Id.). Thus, this provision specifically contemplates that Gannon Hong Kong is obligated to pay for the Unpaid Invoices even though they were issued by CB Chau, rather than Gannon Hong Kong.

Moreover, Gannon's argument that CB Chau was not the agent of Gannon Hong Kong misses the mark. The Distribution Agreement explicitly states that "[Gannon] shall be responsible for any acts of the agents, dealers or subdistributor..." appointed to "sell or promote the Products in the Territory or to otherwise fulfill its obligations under the Distribution Agreement." (ECF No. 60-3, p. 4). Gannon's corporate representative, Michelle Sinn, testified that CB Chau was a dealer for purposes of performing Gannon Hong Kong's obligations under the Distributorship Agreement. See ECF No. 60-2, pp. 80-81; SUMF, ¶11.[5] Thus, pursuant to paragraph 12 of the Distribution Agreement, the Unpaid Invoices, even if owed by CB Chau, remain the responsibility of Gannon Hong Kong. In turn, paragraph 1 of the July Guaranty bound Gannon to pay "all amounts due from [Gannon Hong Kong] in favor of [Connell]". (July Guaranty, ¶1).

Next, Gannon contends that Connell is not entitled to summary judgment on its breach of guaranty claim against Gannon because the amount of the Unpaid Invoices is overstated. (Response,

---

[5]Gannon contends that whether CB Chau was Gannon Hong Kong's "local dealer" under the Distribution Agreement is a legal conclusion and/or represents a genuine issue of material fact. (ECF No. 62, ¶11), but does not provide any evidence to contradict CB Chau's position as a dealer.

pp. 7-8). Gannon argues that it cannot discern how Connell applied Gannon's payments to the invoices. (Id., p. 7). In addition, Gannon maintains that it should not be liable for amounts incurred from August 31, 2010 to October 30, 2010, because Gannon revoked the July Guaranty on August 31, 2010. (Id., pp. 7-8).

As noted by Connell, the mere possibility of inaccurate accounting does not create an issue of material fact in this instance. (Reply, p. 6). In its Response, Gannon does not identify any evidence that would dispute Connell's accounting. See Fed.R.Civ.P. 56(c)(1); Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004); Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999)(in resisting a properly supported motion for summary judgment, the non-moving party has an affirmative burden "to designate specific facts creating a triable controversy."). Gannon's suggestion that the calculation of damages was faulty is ineffective in defeating Connell's supported Motion for Summary Judgment. See Nat'l Elec. Benefit Fund v. Rabey Elec. Co., Inc., No. 11-cv-184, 2012 WL 3854932, at *6 (D. Md. Sept. 4, 2012) (plaintiff's "evidence in support of its motion for summary judgment cannot be rebutted based on mere speculation and the building of one inference upon another"); The Equitable Life Assur. Soc. of U.S. V. Shen, No. 98 C 0366, 1999 WL 231666, at *4 (N.D. Ill. Mar. 26, 1999) (finding that defendant could not create an issue of material fact by merely contending that the damages calculation was "erroneous" and noting that, as guarantor, defendant had "the duty to find out exactly how much he owe[d]").

Finally, Gannon is responsible for Unpaid Invoices incurred after August 31, 2010, even though Gannon revoked the July Guaranty as of that date. Paragraph 9 of the July Guaranty provides that "[t]his Guaranty may be terminated by Gannon upon sixty (60) days' prior written notice to [Connell]." (July Guaranty, ¶9). Thus, under the plain terms of the July Guaranty, Gannon remains responsible for any amounts incurred before October 30, 2010.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment as to Count II [58] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court will have a scheduling conference with the parties via telephone on December 11, 2012 at 11:00 a.m. to establish a briefing schedule and, if necessary, to schedule a date for a hearing on any damages over and above the principal amount . The Court will initiate the telephone conference with the parties.


Dated this 28th day of November, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE
